# Appeal of John B. Ranck et al.

1. Under the Act of April 8th, 1833, the real estate of an intestate must be kept within the blood of the perquisitor. The search for those who shall inherit must be entirely within the blood without reference to any other relationship.

2. One may not for the purpose of inheriting the estate of an intestate fix his kinship in one channel and draw his inheritable blood from another.

May 18th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

APPEAL from the Orphans' Court of *Lancaster county:* Of January Term, 1886, No 339.

Appeal of John D. Ranck, Margaret Ranck, Jacob Ranck, Martin Ranck, Diller Ranck, Sevilla Ranck, and Barbara Ranck, from the decree of the Orphans' Court of Lancaster county, confirming the Auditor's report, distributing the estate of Amos Rhoads, late of Earl township, in the county of Lancaster, deceased.

The question in this case arises in the distribution of the proceeds of real estate of Amos Rhoads, deceased. The said real estate was sold by the administrator of said deceased for the payment of debts under an order of the Orphans' Court.

There was a balance left after the debts were all paid, and that balance remains in the hands of the administrator for distribution. William A. Atlee, Esq., was appointed an Auditor to make said distribution. From the evidence taken by him the following facts appeared:

Henry Rhoad, the common ancestor of the parties claiming this fund, died about one hundred years ago, leaving six children, viz.: 1, Jacob; 2, Philip; 3, William; 4, Elizabeth, wife of ——— Kurtz; 5, Margaret, wife of John Diller; and 6, John.

1. Jacob died leaving three children—Isaac, William and Margaret.

2. Philip died leaving three children—Davis, Henry and Elizabeth.

3. William died leaving one child—John.

4. Elizabeth Kurtz died leaving five children—Henry, Jacob, Philip, John and Elizabeth.

5. Margaret Diller died leaving four children—Joanna, Mary, John and Lucy, who married Jacob Ranck.

6. John had one child, who was also named John. He married Nancy Ranck, a daughter of John Ranck, and they had one child, Amos Rhoads, the intestate. John (6), the grandfather, purchased the real estate, part of the proceeds of the sale of which is the fund now on hand for distribution, and devised the same to his grandson, Amos Rhoads. The said John (6) was, therefore, the perquisitor.

The Jacob Ranck who married Lucy, the daughter of Margaret Diller (5), was the brother of Nancy Ranck, the mother of the intestate. Jacob Ranck and Lucy left seven children, viz.: John D., Margaret, Jacob, Martin, Diller, Sevilla and Barbara, who are the appellants.

Amos Rhoads, the intestate, died on the 14th day of April, 1884, without leaving children, or brothers and sisters. His next of kin are the children of uncles and aunts. His real estate was sold, as aforesaid, and an Auditor was appointed by the Court to distribute the balance in the hands of the administrator.

The fund is claimed by the nieces and nephews of John Rhoads (6), the perquisitor, who were living at the time of the death of Amos Rhoads, the intestate, on the ground that they are the next of kin of the intestate, of the blood of the perquisitor. It is also claimed by the appellants, who are one degree nearer in kin to Amos Rhoads, the intestate, and are also of the blood of the perquisitor through their mother, Lucy Ranck, who was also a niece of the perquisitor and therefore of his blood. (See diagram, p. 100).

The Auditor distributed the said fund to the nephews and nieces of John Rhoads (6), the perquisitor, except Lucy Ranck, she having died before Amos Rhoads, the intestate.

Exceptions were filed to his report, which the Court, LIVINGSTONE, P. J., dismissed, and confirmed the report.

The appellants being one degree nearer in kin to the intestate, Amos Rhoads, than the nephews and nieces of the perquisitor, and being of his blood through their mother, Lucy, one of his nieces, claimed to be within the statutes of descent, which provide that the estate shall descend to the next of kin who are of the blood of the perquisitor.

They therefore took this appeal, assigning for error the confirmation of the Auditor's report.

*A. W. Shader* and *D. G. Eshleman*, for appellants.—The law favors the next of kin. Our Intestate Act of 1833, in classifying the lineal and collateral heirs of intestates, and prescribing the order of succession to the real estate, always selects those most closely related to the intestate—first the whole blood, afterwards the half blood—the only restriction or limitation being found in the ninth section, which provides " that no person who is not of the blood of the ancestor or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein ; but such real estate, subject to such life estate as may be in existence by virtue of this Act, shall pass to and vest in such other persons as would be entitled by this Act, if the persons not of the blood of such ancestor or other relation had never existed, or were dead at the decease of the intestate."

If the appellants are excluded at all, it must be by the proviso in the ninth section.

But they are of the blood ; and they are the next of kin who have any of the blood of John Rhoads, the perquisitor. They have the same blood with the appellees, and they are nearer of kin to the intestate—the appellees being in the fifth degree, while the appellants are in the fourth degree.

The law does not measure fractions of blood : According to Justice STORY, in Gardner *v.* Collins, 2 Peters, 87, cited approvingly in Hart's Appeal, 8 Barr, 37, " A person is with the most strict propriety of language, affirmed to be of the blood of another, who has any, however small a portion, of the same blood derived from a common ancestor."

The proviso in the ninth section was intended only to prevent estates crossing over from the family who acquired them

into families who had no part in such acquisition: Roberts' Appeal, 3 Wright, 420.

Under the Act of 1833, brothers and sisters of the half blood and their issue, take to the exclusion of more remote kindred of the whole blood; and in preference to a deceased uncle of the whole blood: Hart's Appeal, 8 Barr, 32; Baker *v.* Chalfant, 5 Wharton, 477.

It must follow, therefore, that the Auditor and Court erred in deciding that the fund should be distributed to those who are of the whole blood of the perquisitor, without regard to those who are next of kin, and also of the blood of the perquisitor.

Each case must be decided with reference to the circumstances surrounding it: Bevan *v.* Taylor, 7 S. & R., 397; Lewis *v.* Gorman, 5 Barr, 166; Moffit *v.* Clark, 6 W. & S., 253, the next of kin were not of the blood of the perquisitor. To follow those cases therefore would nullify the provision in the seventh section of the Act of 1833, as limited by the ninth section. To exclude the appellants, who are one degree nearer in consanguinity to the intestate and of the blood of the first purchaser, in favor of the appellees, who are one degree farther removed from the intestate, would defeat that which is so anxiously maintained all through the Act, viz.: that the real and personal estate shall go to and be distributed among those who are next of kin to the intestate, to whom it might well be supposed he would desire it to go.

*Eugene G. Smith*, for appellees.—The appellees are, of and through the blood of the perquisitor, the next of kin of Amos Rhoads, the intestate; and they are absolutely, in every respect, the next of kin of John Rhoads, the perquisitor. "The maxim under our statutes. as well as at common law, is, that he who claims an estate descended to an intestate, must show himself heir to him from whom it descended as perquisitor:" Lewis *v.* Gorman, 5 Barr, 166. "He is the *propositus*, and from him the inheritable blood is to be derived." It is necessary to ascend to the first purchaser, to discover who the "ancestors or other relations" are, and in and through his blood find the next of kin. With the light of this rule the appellees beyond all doubt or cavil are the next of kin and entitled to this fund: Robert's Appeal, 3 Wr., 417; Perot's Appeal, 6 Out., 235. The appellants claim inheritable blood through their mother, Lucy Ranck, who died before the intestate, and they are one degree more remote than her brother and sisters, to whom, with others, the fund was awarded. The appellees are in the fifth degree, and the appellants in the sixth, and therefore not next of kin: 7th sec., Act 1833.

"Consanguinity, or kindred, is defined by the writers on these subjects to be '*vinculum personarum ab eodum stipite descendentium*,' the connection or relation of persons descended from the same stock or common ancestor:" 2 Blackstone's Com., *202. There cannot be two perquisitors from whom to trace the blood in order to fix the next of kin to inherit the real estate devised by one. All who can inherit must do it through the same stock or common ancestor. The next of kin must be of the blood and inherit through the blood of the perquisitor.

The opinion of the Court was filed May 31st, 1886.

PER CURIAM. This fund was correctly distributed. The appellants are one degree more remote from the perquisitor than the appellees, to whom the money was decreed. If the contention of the appellants was logically correct, and their mother was still living, they would take to her exclusion, although they now claim their inheritable blood through her.

Decree affirmed and appeal dismissed at the costs of the appellants.